IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) 1:17-cr-270 (LMB) |
| WAQAR HUSSAIN KHAN, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is defendant Waqar Hussain Khan's ("defendant" or "Khan") Motion to Dismiss Indictment for Violation of the Speedy Trial Act ("Motion"). [Dkt. No. 214]. Khan argues that he is entitled to relief because the government filed a criminal complaint and obtained an arrest warrant for him on December 23, 2009, but did not formally request his extradition from Pakistan until November 2020. Id. at 4. In opposition, the government argues that defendant cannot satisfy the test set forth in Barker v. Wingo, 407 U.S. 504 (1972) to warrant dismissal of his Indictment. For the reasons discussed below, Khan's Motion will be denied.

One of Khan's co-defendants, Umar Farooq Chaudry, filed a nearly identical motion to dismiss the Indictment in this case for violation of the Speedy Trial Act, which the Court denied in open court on April 9, 2024. Thereafter, the Court issued a 17-page Memorandum Opinion setting forth much of the relevant background of this case and explaining its reasons for denying the motion ("Memorandum Opinion"). [Dkt. No. 182]. For purposes of efficiency, the Court hereby incorporates the Memorandum Opinion into this Order and will only add facts and analysis specific to Khan's Motion. These facts show that Khan is personally responsible for

several years of delay, which along with the facts discussed in the Memorandum Opinion establish that there was no speedy trial violation in this case.

Khan, who holds dual Pakistani-U.S. citizenship, was the first of the five defendants to be released from prison in Pakistan in 2020. In anticipation of his release, in the fall of 2019, the FBI met multiple times with Khan's parents and brother in the United States to facilitate his return. Khan's family said they wanted him to voluntarily return to the United States and would encourage him to turn himself in. [Dkt. No. 215-1] at 2. The FBI said it would help all five defendants obtain new passports to enable them to travel home. Id. Despite these early communications, Khan did not take any steps to return to the United States in 2020.

On June 17, 2021, the government contacted Khan's attorney and advised that it was attempting to bring all five defendants back to the United States at the same time. The government explained that, due to uncertainties and complexities with the extradition process in Pakistan, Khan's consent to extradition and surrender to Pakistani authorities was necessary if he wanted the government's help in returning to the United States. [Dkt. No. 214-1] at 2. Khan did not take any steps to facilitate his voluntary return.

More than a year later, on October 3, 2022, the government contacted Khan's attorney and informed him that co-defendant Chaudry was in custody in Pakistan and that the government wanted to bring Chaudry and Khan back to the United States on the same flight. The government advised that "to begin that process, your client would need to turn himself into [sic] Federal Investigative Agency ["FIA"] – Counterterrorism Wing, given the nature of his past conviction." Id. at 4. A little more than a week later, Khan's attorney responded, saying "[Khan's] family advises that he wants to move forward with the proposal you set out in your October 3 email." Id. at 3. Despite that representation, two more months passed and, on

2

December 16, 2022, Khan's attorney contacted the government and said, "[I] [t]hink he's ready to turn himself in" and forwarded questions that Khan's family had about the extradition process. [Dkt. No. 215-3] at 2-3. The government sought answers to those questions and, on May 23, 2023, received a four-page memorandum from a Pakistani attorney outlining the process, which it forwarded to Khan's attorney. [Dkt. No. 215-4]; [Dkt. No. 215-3] at 2. That memorandum stated that Chaudry's extradition proceedings were at the "evidence stage" and "likely to conclude in the near future," but that Khan's extradition proceedings had "not yet commenced" because Khan had neither been arrested nor surrendered. [Dkt. No. 215-4] at 3. Based on the information contained in the memorandum, the government advised Khan's attorney that "it looks like [Khan] can turn himself in, and if he does so, his case could in theory proceed in tandem with Chaudry's." [Dkt. No. 215-3] at 2.

On July 18, 2023, the government contacted Khan's attorney and informed him that Chaudry had agreed to withdraw his opposition to the extradition and reiterated that it would be preferable to have Khan and Chaudry return to the United States "on the same flight if at all possible." [Dkt. No. 215-5] at 4-5. Chaudry returned to the United States in December 2023; however, Khan remained in Pakistan.

On August 14, 2024, the government informed Khan's attorney that Chaudry had been convicted and sentenced to "the same no-jail sentence" as two other co-defendants in this case and asked him if Khan was willing to return voluntarily. [Dkt. No. 215-5] at 3-4. Khan's attorney replied that, "Mr Khan is interested in turning himself in" and asked for a point of contact ("POC") with whom he could coordinate. The government provided a POC at the FIA Zonal Office in Islamabad. Despite having this information, Khan did nothing to facilitate his return for the rest of that year.

3

On February 25, 2025, Khan's attorney informed the government that he had "just been advised by Mr. Kahn that he is ready to turn himself in at the beginning of March. He is asking for instructions. Are you able to assist?" [Dkt. No. 215-6] at 3. The government again provided a POC at the FIA in Islamabad.

On April 29, 2025, the government learned that Khan had turned himself in and was in Pakastani custody. Several days later, Khan's attorney forwarded to the government an email from Khan's brother describing Khan's initial appearance before a Pakastani judge in the extradition proceedings:

> At the court hearing, Waqar had informed the judge that he would like to be extradited to the U.S. Waqar also informed the judge that he will not contest extradition to the U.S. Waqar had also informed the judge that when he was released from jail in 2020 he had been a good standing [sic] citizen. Waqar was released before the 4 other [co-defendants]. After his release from jail he started working, never committed a crime. He even got married.

[Dkt. No. 215-8] at 2. Kahn was extradited from Pakistan and arrived in the United States on July 23, 2025, five years after his release from prison in Pakistan.

As explained in the Memorandum Opinion, the Court must consider the four <u>Barker</u> factors in determining whether there has been a violation of the defendant's right to a speedy trial. [Dkt. No. 182] at 9-17. Applied to the facts of Khan's case, the Court finds, for the same reasons explained in Chaudry's case, three of the four factors weigh against Khan's argument that his Sixth Amendment right to a speedy trial has been violated. In particular, the third <u>Barker</u> factor—the timeliness of defendant's assertion of his right to a speedy trial—weighs even more heavily against Khan than it did against Chaudry. Khan waited for five years to turn himself in to Pakastani authorities to be extradited to the United States. The delay attributable to Khan's conduct was two years longer than the delay attributable to Chaudry's conduct. In fact, from the time of his release from the Pakastani prison in early 2020 to his surrender to Pakistani

authorities in April 2025, Khan found a job and got married. These actions are inconsistent with someone asserting his right to a speedy trial and reflect a desire to delay trial or avoid it altogether.

Because Khan has failed to establish that the second, third, and fourth Barker factors support his speedy trial claim, it is hereby

ORDERED that Khan's Motion to Dismiss the Indictment [Dkt. No. 214] be and is DENIED.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 2nd day of October, 2025.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

5