UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 1:17-cr-00270-005 |
| | ) | |
| WAQAR HUSSAIN KHAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION FOR AN ORDER PERMITTING INTERNATIONAL TRAVEL**

Waqar Hussain Khan asks the Court for permission to travel to the Kingdom of Saudi Arabia for a single period of 28 consecutive days, on dates approved in advance by the United States Probation Office, to perform Umrah and to spend that time with his wife. She lives in Pakistan, holds a Pakistani passport, and cannot enter the United States. The Probation Office has stated in writing that it takes a neutral position on the request and leaves the matter to the discretion of the Court.

I. **The Judgment permits the proposed travel.**

The Judgment entered on January 6, 2026 imposes no restriction on foreign travel. ECF No. 230 (Ex. A). It imposes two special conditions. The first prohibits Mr. Khan from associating or communicating with any person he knows to be a terrorist or a member of a terrorist organization, including any person involved in the offense of conviction. The second requires his participation in a computer monitoring program. The Court imposed no condition barring travel outside the United States, nor did it require surrender of a passport or impose location monitoring. It suspended the mandatory drug testing condition on an express finding that Mr. Khan presents a low risk of future substance abuse. The presentence report recommended those same two special conditions and no others, so Probation proposed no travel restriction either.

Foreign travel is governed by Standard Condition 3 alone, which directs that Mr. Khan "must not knowingly leave the federal judicial district where [he is] authorized to reside without

first getting permission from the court or the probation officer." The permission is disjunctive. Either the Court or the probation officer may grant it. Mr. Khan seeks no modification of his conditions under 18 U.S.C. § 3583(e)(2).

## II. The government concedes that Mr. Khan returned voluntarily, and its own correspondence accounts for the delay it holds against him.

The United States declined to agree to Mr. Khan's initial request to visit his wife in Pakistan. Its July 16, 2026 email acknowledges that he "ultimately did agree to return to the United States voluntarily," then qualifies the concession: he "only did so after several years elapsed following his release." Ex. H. Those years belonged to a process the United States ran, and the government documented its own delays contemporaneously, in writing, to counsel.

Mr. Khan was released from Pakistani custody in October 2020. Pakistani authorities had held him nearly a year past his scheduled release date. The first written record of his position after that release is dated eight months later. On June 17, 2021, Assistant United States Attorney James P. Gillis wrote:

> From our last conversation, I understand that your client, Waqar Khan, is interested in the assistance of the U.S. government in returning to the United States. There are many uncertain events now taking place that will complicate his return, including the timing of the return of other defendants, the pending request by the United States to Pakistan for your client's extradition, and the unpredictable nature and timing of court proceedings in Pakistan.

Ex. C.

Mr. Gillis then set out how little the United States could promise. At that point the government had "no idea when the Pakistani authorities will allow the return of other defendants." As to how long Mr. Khan would sit in Pakistani custody after surrendering, it had "no estimate," and it added: "There is no way for us to predict, and we would have no control over that." The surrender decision itself "would still have to be made by Pakistan's Minister of Interior." *Id.*

That disclaimer carried particular weight for this defendant. Mr. Khan had recently spent nearly a year in Pakistani prison past the date he was supposed to walk out of it. The United

States was now asking him to place himself back in the hands of the same authorities while telling him in writing that it had no estimate of how long they would hold him and no ability to influence it.

The offer would be extended once, and only in coordination with the other defendants; if Mr. Khan failed to cooperate fully and promptly, "[t]hereafter he will be on his own." Mr. Gillis was equally plain about what waited at the other end. "[W]hen your client lands in the United States, he will remain in custody on our outstanding warrant. At his initial appearance, the United States will ask the Court for his detention." *Id.* Mr. Khan was told in writing that the reward for cooperating would be arrest and a detention motion.

The process then stalled. In September 2022 Mr. Khan's family asked counsel how to bring him home. Assistant United States Attorney John T. Gibbs responded on September 28, 2022 that he was "working with FBI to figure out the best way to approach the Pakistani government about your client's case," and that the effort "will likely require the FBI to fly out to get him." Ex. D. On October 3, 2022, Mr. Gibbs relayed the FBI Legal Attaché's proposal that Mr. Khan "turn himself into Federal Investigation Agency - Counterterrorism Wing, given the nature of his past conviction." *Id.* Nine days later counsel wrote back that Mr. Khan "wants to move forward with the proposal" and asked whom he should contact. *Id.*

Nine months passed. On July 18, 2023, Mr. Gibbs reported that a Pakistani court had cleared co-defendant Umar Chaudhry for extradition and that the Bureau strongly preferred to fly both men back to the United States on the same flight. Ex. E. A month later the Legal Attaché was still working out how the FIA Counter-Terrorism Wing should make contact, and Mr. Gibbs wrote that telling the FIA of Mr. Khan's willingness to surrender would smooth the process. Ex. F. That willingness had been on the record for nearly a year.

On February 25, 2025, counsel wrote to Mr. Gibbs that Mr. Khan "is ready to turn himself in at the beginning of March" and "is asking for instructions." Ex. G. Mr. Gibbs replied the same

day that he should be able to assist and would contact the FBI case agent. On March 3, 2025, counsel followed up with a single line: "John, heard anything from the FBI yet?" *Id.* Nothing came of it.

On April 28, 2025, Mr. Khan walked into the Federal Investigation Agency office in Islamabad and presented himself. He was sent away for the evening, returned the next morning, and surrendered. He entered United States custody in July 2025. The extradition request the United States had filed years earlier never produced him.

He did all of that knowing, because the government had told him in writing, that he would be arrested on landing and that the United States would move for his detention. The Court is now asked to treat him as a man who would disappear from a supervised trip.

III. **The Probation Office does not oppose this request.**

Counsel asked Senior United States Probation Officer Franklin Weaver whether the earlier denial had been specific to Pakistan, or whether his office took the position that Mr. Khan should not travel outside the United States at this stage of his term regardless of destination. Mr. Weaver answered on July 21, 2026:

> If you submit another request to Saudi Arabia, I would take a neutral position on the request. Furthermore, I have no objection to him obtaining a passport.

Ex. B.

Mr. Weaver also identified the two concerns that had produced the earlier denial. The first was the destination: "the reason the request was denied was because of the fact that he was requesting to travel to Pakistan." The second was timing. Mr. Khan "only started supervision approximately 7 months ago," had "just started working," and "needs to establish a positive pattern of life after his release and return to the U.S." *Id.*

IV. **Both concerns the Probation Office identified have been answered.**

Mr. Khan does not ask to go to Pakistan. He asks to go to Jeddah, Mecca, and Medina, and he asks the Court to write into its Order that he may not enter or transit Pakistan at any point and may not travel on a Pakistani carrier.

Mr. Khan has been under continuous United States supervision since July 24, 2025, first on pretrial release and then on supervised release, and paragraph 12 of the presentence report records his full compliance with every pretrial condition. As of this filing he has completed more than twelve months of unbroken supervision without a violation of any kind. By the travel window proposed below he will have completed roughly nineteen months on supervision.

He works full time as an automobile mechanic's assistant. He lives in his parents' townhome in Alexandria with his mother and father, a disabled sister who requires continuous care, and a younger brother. He contributes to the household and sends money to his wife. That is the pattern Mr. Weaver asked to see in his email, and Mr. Khan has been living it, verifiably, for over a year.

After his release from custody in Pakistan, Mr. Khan worked continuously and paid his own rent. He kept documentation of every position he held, along with resignation letters from his employers attesting to the quality of his work. Ex. I. He built that life in Pakistan and left it to surrender.

## V. Saudi Arabia is the only country in which Mr. Khan and his wife can lawfully be together.

Mr. Khan married Aqsa Khan in Pakistan on February 2, 2025, three months before he surrendered. She is a Pakistani national who lives in Pakistan and has never been to the United States. Petitions for both an immigrant and a nonimmigrant visa have been filed on her behalf and remain pending without substantive update.

Effective January 21, 2026, the Department of State paused immigrant visa issuance to nationals of Pakistan indefinitely. No end date has been announced. Presently, there is no lawful path for Mr. Khan's wife to join him in the United States.

That leaves third countries as the only option. A Pakistani passport ranks among the weakest travel documents in the world measured by visa access, and most countries that would admit Mr. Khan without difficulty on a United States passport will not issue his wife a visa at all, or will do so only after a long process with an uncertain result. Saudi Arabia is the exception. The Kingdom operates a dedicated pilgrimage visa channel and admits Pakistani nationals through it in very large numbers, routinely and on a predictable timeline.

The Khans have been married eighteen months and have spent almost none of that time in the same country. He asks for only 28 days to spend with his wife.

## VI. **The proposed conditions foreclose the risk.**

Mr. Khan asks that the following conditions be written into the Court's order and made enforceable as conditions of the authorized travel:

1. Travel confined to the Jeddah, Mecca, and Medina corridor, with no other travel within the Kingdom of Saudi Arabia.
2. No entry into or transit through Pakistan at any point in the itinerary, and no segment operated by a Pakistani flag carrier.
3. Travel on a United States passport only, with any Pakistani travel document in his possession or control surrendered to the United States Probation Office before departure and retained by that office for the duration of the trip.
4. Booking through a licensed United States tour operator, with the complete itinerary, lodging information, and a confirmed return reservation delivered to the Probation Office not later than twenty-one days before departure.
5. Daily check-in with the Probation Office in whatever form that office designates.
6. In-person reporting to the Probation Office before departure and within seventy-two hours of return.
7. Notice to the Federal Bureau of Investigation, with pre-travel and post-travel interviews at the Bureau's election.
8. Immediate report to the Probation Office of any contact or communication that could implicate the association condition imposed by the Judgment.
9. Continued compliance with the computer monitoring condition on whatever terms the Probation Office directs for the period abroad.

Mr. Khan holds Pakistani citizenship in addition to his United States citizenship. He does not offer that fact in support of the motion. He identifies it because it is the only mechanism by which the outcome the government fears could occur, and because the third condition above removes it. With his Pakistani travel documents in the custody of the Probation Office and his travel restricted to a United States passport, he cannot lawfully enter Pakistan from Saudi Arabia.

VII. **The timing of this motion, and the relief requested.**

Mr. Khan does not hold a valid United States passport. Mr. Weaver has confirmed in writing that he has no objection to Mr. Khan obtaining one. Ex. B. Given the nature of the conviction, counsel anticipates that the application will require processing time beyond the ordinary course, and Mr. Khan therefore asks the Court to authorize travel within a defined future window rather than on fixed dates.

He brings the motion now, before the passport is issued, for a practical reason. An Umrah package requires a nonrefundable deposit, a Saudi visa application, and commitments made months in advance. Neither Mr. Khan nor his family should be asked to incur those costs, or to build a passport application around travel that may never be authorized, without first knowing the Court's determination.

The request put to Mr. Weaver on July 21, 2026 described a trip of approximately two weeks. Ex. B. Mr. Khan has since discussed the trip with his wife, weighing the cost and difficulty of arranging a second visit against the value of a single longer stay together after eighteen months spent almost entirely in different countries, and he now asks for 28 days rather than the shorter period first put to the Probation Office. The destination remains Saudi Arabia, not Pakistan. The itinerary remains confined to the Jeddah, Mecca, and Medina corridor. Every condition proposed in Section VI, including surrender of Mr. Khan's Pakistani travel documents

to the Probation Office and daily check-ins for the duration of the trip, applies for the full 28 days.

For these reasons, Mr. Khan respectfully requests that the Court enter an order permitting him to travel to the Kingdom of Saudi Arabia for a single period of 28 consecutive days, commencing on a date between February 1, 2027 and April 30, 2027 approved in advance by the United States Probation Office, subject to the conditions set out above, and further stating that nothing in the conditions of supervised release imposed by the Judgment prohibits the issuance or renewal of a United States passport to Mr. Khan.

WAQAR HUSSAIN KHAN
By Counsel

/s/ Pleasant Brodnax
Pleasant S. Brodnax, III
VSB No. 26477
1701 Pennsylvania Ave, NW, Suite 200
Washington, D.C. 20006
(202) 462-1100
www.pleasantbrodnax.com
pleasant@pleasantbrodnax.com

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Judgment in a Criminal Case, ECF No. 230 (Jan. 6, 2026) |
| Exhibit B | Email of USPO Franklin Weaver to counsel (July 21, 2026) |
| Exhibit C | Email of AUSA James P. Gillis to counsel (June 17, 2021) |
| Exhibit D | Email chain, AUSA John T. Gibbs and counsel (Sept. 26 to Oct. 12, 2022) |
| Exhibit E | Email of AUSA John T. Gibbs to counsel (July 18, 2023) |
| Exhibit F | Email of AUSA John T. Gibbs to counsel (Aug. 15, 2023) |
| Exhibit G | Email chain, counsel and AUSA John T. Gibbs (Feb. 25 – Mar. 3, 2025) |
| Exhibit H | Email of AUSA John T. Gibbs to counsel (July 16, 2026) |
| Exhibit I | Pakistani employment records and resignation letters |

## CERTIFICATE OF SERVICE

I certify that on August 24, 2026 I filed the foregoing motion by CM/ECF, which will send notification of the filing to all parties to this proceeding, including John T. Gibbs, Assistant United States Attorney, and that I served a copy by electronic mail on Senior United States Probation Officer Franklin Weaver.

/s/ Pleasant Brodnax
Pleasant S. Brodnax, III