IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:17-CR-270 (LMB) |
| | ) | |
| WAQAR HUSSAIN KHAN | ) | |

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO DEFENSE MOTION FOR AN ORDER PERMITTING INTERNATIONAL TRAVEL

The defendant moves this Court for an order to modify his conditions of supervised release to permit him to travel internationally to Saudi Arabia. Dkt. 232. For the reasons set forth herein, the government opposes this motion.

## I. Factual Background

The Statement of Facts filed with the defendant's plea agreement sets forth the relevant facts in this case. Dkt. 219. What those facts convey is how troubling this criminal conduct was. The defendant and four of his friends self-radicalized over a very short period of time and then resolved to travel to Afghanistan to wage jihad. Dkt. 219 at ¶ 8. As described in the Statement of Facts, "the defendants understood that while engaged in jihad in Afghanistan, they would likely encounter U.S. military forces. The defendants intended to fight and if necessary, to kill any U.S. military forces that opposed the defendants." Dkt. 219 at ¶ 29. Unlike many defendants who are discovered long before they are able to plan and execute a conspiracy to leave the country, these defendants had the resolve and the discipline to successfully depart without anyone knowing their plans. Not their teachers. Not their friends. Not even their families.

And, significantly, once they arrived in Pakistan and found that they could not get in touch with Saifullah, their terrorist facilitator, it was Waqar Khan and Umar Chaudhry who took it upon themselves to find another way to get into Afghanistan. They traveled to mosques in the

cities of Hyderabad and Lahore in an effort to find someone who could help them pursue jihad. Khan and Chaudhry successfully made contact with individuals they understood to be associated with the foreign terrorist organizations Jaish-e-Mohammed and Jamaat-ud-Dawa. Dkt. 219 at ¶ 27-28. Soon thereafter, Khan and his co-conspirators were arrested together in Sargodha, Pakistan. Dkt. 219 at ¶ 30.

**A. United States' Efforts to Obtain Custody of the Defendant**

The government takes issue with the defense's suggestion that his return to the United States occurred as part of "a process the United States ran." Dkt. 232, Defense Motion for an Order Permitting International Travel at p. 2. To the contrary, in its opposition to Defendant's Motion to Dismiss on Speedy Trial Grounds at Dkt. 215, the government described its efforts to obtain custody of the defendant, and how those efforts were repeatedly stymied by the defendant until he finally relented and agreed to return to the United States voluntarily. What that timeline underscores is the fact that once the defendant leaves the United States, which he is now seeking to do, the government is very limited in what it can do to get him to return to this country.

In the case of Pakistan, it is significant that the government first made inquiries with the defendant's family as early as 2019, while he was still in Pakistani prison, to see if there would be an easy way to get him to return to this country following his release. Dkt. 215 at p.p. 3-4. In June 2021, following the defendant's release from Pakistani prison, the government communicated with Khan's attorney about facilitating his return to the United States. There is no indication in the record that the defendant did anything to facilitate his return, either by consenting to extradition or by attempting to surrender himself to Pakistani authorities in 2021 or most of 2022. *Id*. at p. 4.

Following a December 2022 request from Khan's attorney indicating that he was now interested in turning himself in for extradition, the government provided the defense with a four-page memorandum from a Pakistani attorney in May 2023 that outlined the process for

submitting to extradition. Nothing came out of those communications on the part of Khan, though his co-defendant, Umar Chaudhry, did turn himself in to face extradition. *Id*. at p.p. 4-5.

Beginning in July 2023 and continuing through August 2024, the government and the defendant's attorney again communicated about having the defendant turn himself in for extradition. In fact, the government provided defense counsel with the name of a Federal Investigative Agency [FIA] office to turn himself into in Islamabad, Pakistan along with the name of an Assistant Director for FIA whom he should ask for. However, nothing came of this communication as the defendant did not turn himself in. *Id*. at p. 6.

Finally, on April 29, 2025, following more communications between the government and the defendant's attorney, the defendant turned himself in to the same FIA office that the government had provided to the defense in August 2024. He was ultimately extradited back to the United States five years after being released from Pakistani prison, despite the fact that he was the first of the five defendants to finish his sentence. *Id*. at p. 7.

**B. Defendant's Motion Seeking Permission to Travel Internationally**

The defendant was sentenced pursuant to his plea agreement on January 6, 2026. Dkt. 230. He was sentenced to time served and 20 years supervised release. *Id*. at p. 2-3. The defendant's supervised release conditions effectively bar him from traveling internationally, or even out of the district, without the Court's permission.[1] Among the standard conditions of supervision was # 3 which states, "You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation office." *Id*. at p. 4. As counsel notes in its motion for permission to travel internationally, the Probation Office has not given permission for the defendant to travel abroad.

1 It is important to note that the instant motion only relates to the conditions of the defendant's supervised release. Whether he can travel internationally may also be subject to any applicable government restrictions beyond those supervised release conditions.

Rather, it has taken a neutral position on the request and has expressed no objection to having the defendant obtain a passport. Dkt. 232 at p. 4.

The government's concern about the defense motion is two-fold. First, the defendant has simply not been on supervised release long enough to provide the necessary assurances that he will comply with the conditions of his supervised release while he is abroad. The defendant was sentenced to 20 years supervised release, but he has only been on post-conviction supervision for nine months.[2] That is simply too short a time period to conclude that the defendant should be allowed to travel abroad.

Second, the defendant's past history raises serious concerns about what he may do if he is allowed to leave this country. The last time he traveled abroad, he committed a terrorist offense that led to ten years in a Pakistani prison, and then after his release, he waited a full five years before agreeing to return to the United States. Nothing about that history inspires confidence that the defendant will continue to abide by the terms of his sentence.

And it is important to note, if the defendant is successful in leaving the country, he will be completely unsupervised. Condition 6 of the Standard Conditions of Supervision states, "You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view." Dkt. 230 at p. 4. Clearly there is no way for the probation officer to visit the defendant at his home or elsewhere once he is in Saudi Arabia. And while the defendant maintains that he will only go to locations within Saudi Arabia, that is a completely unenforceable promise. If he chooses to travel from Saudi Arabia to some other country, it would not be difficult to do so.

---

2 The government recognizes that the defendant was under court-ordered supervision following his return to the United States in July 2025, but that is only slightly more than a year of supervision. As noted above, it is simply far too short a time to conclude that the defendant can be afforded the opportunity to travel internationally.

Similarly, Special Condition 2 requires the defendant to submit to the Probation Office's computer monitoring program. *Id*. at 5. While this provision of defendant's supervision can be enforced while he lives in this district, there is no way to enforce it if he is in Saudi Arabia. Effectively the defendant will be unsupervised such that there is no way to confirm what he is doing, who he is with, or whether he has returned to path that led him to Pakistan in 2009. Given these serious concerns, the government opposes the motion to modify the conditions of supervised release to permit the defendant to travel overseas. The Court should deny this motion.

Respectfully submitted,
Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant United States Attorney

By: /s/

John T. Gibbs
Assistant United States Attorney
Virginia Bar No. 40380
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
John.gibbs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2026, I electronically filed the foregoing Memorandum in Opposition to Defense Motion for an Order to Permit International Travel with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

/s/

John T. Gibbs
Assistant United States Attorney
Virginia Bar No. 40380
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
John.gibbs@usdoj.gov